FILED - USDC - FLMD - FTM
SEP 14 2026 PM3:37

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 2:26-cr- 251-SPC-NPM
18 U.S.C. § 1014

MARK FRISBIE (False Statement in Crop Insurance Claim)

# INFORMATION

The Attorney for the United States, Acting under the Authority Conferred by 28 U.S.C. § 515, charges:

At times material to this Information:

*Introduction and Background*

1. MARK FRISBIE was a resident of the Middle District of Florida. FRISBIE was an agricultural chemical salesman and managed a farm in or around Immokalee, Florida.

2. The farm that FRISBIE managed was pursuant to a partnership agreement with Coconspirator 1.

3. Under the partnership agreement, Coconspirator 1 funded the farm, and FRISBIE oversaw and managed the farm.

4. Coconspirator 1 (and Coconspirator 1's businesses) marketed all crops harvested on the partnership's farm.

5. FRISBIE and Coconspirator 1 shared profits and losses from the partnership's farm 60% (Coconspirator 1) to 40% (FRISBIE).

6. Some of the partnership's crops were insured through the Federal Crop Insurance Program.

*The Federal Crop Insurance Program*

7. The Federal Crop Insurance Program was a government program designed to improve the economic stability of American farmers; it allowed American farmers to insure themselves against natural disasters such as droughts or floods.

8. The Federal Crop Insurance Program functioned through the Federal Crop Insurance Corporation ("FCIC")—a wholly owned subsidiary of the United States Department of Agriculture. The FCIC had authority to oversee and administer the Federal Crop Insurance Program.

9. The FCIC was managed by the United States Department of Agriculture's Risk Management Agency ("RMA"), and the terms FCIC and RMA were often used interchangeably.

10. The Federal Crop Insurance Program was administered through a "reinsurance program."

11. Under the reinsurance program, private (non-government) insurance companies sold and serviced federal crop-insurance policies. The federal government—through the FCIC—then reinsured much of the risk. The reinsurance was provided through a "Standard Reinsurance Agreement."

12. To be reinsured, an insurer had to be approved by the federal government. Approved insurers were known as "Approved Insurance Providers" or "AIPs."

13. If a farmer believed that they suffered a "covered loss"—i.e., a loss caused by an "unavoidable, naturally occurring event[]"—the farmer could file a "notice of loss" with their AIP.

14. The farmer's notice of loss detailed both their asserted cause of loss and the date of the loss.

15. The notice of loss also detailed the farmer's intention with respect to the insured crop—for example, whether the farmer intended to replant the crop, harvest the crop, or destroy the crop.

16. If a farmer intended to harvest the crop, the farmer could—after harvesting—decide whether to withdraw or go forward with their crop-insurance claim.

17. If the farmer went forward with their crop-insurance claim, they were required—as part of their claim—to report how their harvest went.

18. Specifically, when submitting their crop-insurance claim, the farmer was required to report their actual crop production and sales—i.e., how much crop they produced and sold (and at what prices).

19. The Federal Crop Insurance Program was a "producer certification program," requiring farmers to certify and submit truthful and complete information.

**COUNT ONE**
**(False Crop Insurance Claim)**

20. On or about February 5, 2020, in the Middle District of Florida, the defendant,

MARK FRISBIE,

knowingly made a false statement and report for the purpose of influencing in any way the action of the Federal Crop Insurance Corporation, and a company that the Federal Crop Insurance Corporation reinsured, in connection with the payment of a crop-insurance benefit, to wit: MARK FRISBIE submitted a crop-insurance claim to his Approved Insurance Provider which falsely underreported the bell pepper production and bell pepper sales from the farm that he oversaw—knowing that the farm that he oversaw had produced, harvested, and sold more bell peppers than FRISBIE declared in his claim.

In violation of 18 U.S.C. § 1014.

**FORFEITURE**

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1014, as charged in Count One, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

SARA C. SWEENEY
*Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515*

By: ______________________
Chelsey Hanson
Assistant United States Attorney

By: ______________________
Simon Eth
Assistant United States Attorney

By: ______________________
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division